### MULLER v. VESELL.

(Supreme Court, Appellate Division, First Department. January 11, 1907.)

NEGLIGENCE—EVIDENCE—SUFFICIENCY.

    In an action for injuries caused by defendant's negligence in permitting a dumb-waiter in a tenement house owned by him to become unsafe, evidence *held* to sustain a verdict for plaintiff.

Appeal from Trial Term, New York County.

Action by Clara Muller against Mayer Vesell. From a judgment for plaintiff, defendant appeals. Reversed and new trial granted.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGHLIN, CLARKE, and SCOTT, JJ.

Benno Loewy, for appellant.

Frank Herwig, for respondent.

SCOTT, J. The plaintiff has recovered a verdict for damages for an arm broken, as alleged, in consequence of defendant's negligence in permitting a dumb-waiter in a tenement house owned by him to become unsafe. The verdict is challenged as contrary to all the credible evidence in the case. The house was a five or six story tenement with dumb-waiter running from top to bottom, and used by all the tenants in the building. The plaintiff resided on one of the lower floors with her daughter and son-in-law, the latter acting as janitor of the building. The plaintiff's story is that on April 8, 1900, she desired to use the dumb-waiter to send ashes down to the cellar; that she looked into the shaft and found that the dumb-waiter was two or three stories above her; that she pulled the appropriate rope to cause it to descend, when the rope which suspended it broke and the dumb-waiter fell, catching her arm and breaking it.

It is significant, in view of the other evidence in the case, that more than 15 months elapsed after the accident before suit was brought, and in all that time no notice was given to defendant or his agent, or, so far as appears, to any one else that plaintiff claimed that her arm had been broken in the way she now says it was. As has been said plaintiff's son-in-law was janitor of the building and remained such for about a year after April 8, 1900. It was soon after he ceased to be janitor and had moved out of the building, and not until then that it appears to have first been claimed that the injury was caused by the dumb-waiter. It was positively testified to by the plaintiff and her witnesses that the accident happened on April 8, 1900, and that that day fell on a Tuesday. It was said that the plaintiff's daughter did the washing on Tuesdays, and that it was because she was washing on the day of the accident that her mother used the dumb-waiter. The son-in-law testified that he went to work on the day of the accident and did not return until 6 or half past 6 at night. It was conceded on the trial, however, that April 8th did not fall upon a Tuesday but upon a Sunday.

The dumb-waiter was raised by pulling on ropes hanging from the hoisting mechanism at the top of the building. One rope hung at the left hand of the opening into the shaft, and the other on the right

hand. The counterpoise was on the left side of the shaft. The plaintiff's left arm was broken and she testifies that, in order to cause the dumb-waiter to descend, she pulled on the left-hand rope, which, as she and her daughter and son-in-law persisted, was the proper rope to pull to lower the dumb-waiter. The clear evidence of disinterested witnesses was that precisely the contrary was the fact; that it was the right-hand rope that brought the dumb-waiter down, and that pulling the left one would cause it to rise. The negligence charged against the defendant was that he had permitted the rope by which the dumb-waiter was suspended to become and remain weak and unsafe. It was, of course, necessary to show some notice to him or state of affairs which would import notice. Accordingly the plaintiff's daughter testified that she had notified defendant two months before the accident that the rope was breaking, and her husband testified that he had given similar notice three weeks before the accident. Both described the rope as being in the last stages of dilapidation. It was shown by competent, persuasive, and almost convincing evidence that a new rope had been put in on February 28th, about five weeks before the alleged accident, and that it was still in place and in use at the time of the trial.

After a careful reading of the whole evidence, we are persuaded that the verdict should not be allowed to stand, and that the motion to set it aside should have been granted.

Judgment and order reversed, and a new trial granted, with cost to appellant to abide the event. All concur.